Laura King, MT Bar # 13574
7 Mergenthaler Road
Montana City, MT 59634
laurahelenking@gmail.com
ph: (909) 200-9776

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, NATIVE ECOSYSTEMS COUNCIL, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES FOREST SERVICE; RANDY MOORE, Chief of the Forest Service; MARY ERICKSON, Forest Supervisor for the Custer Gallatin National Forest; and LEANNE MARTEN, Regional Forester for Region 1 for the U.S. Forest Service, <br><br> Defendants. | NO. <br><br><br> COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

**I.  NATURE OF ACTION**

1. The United States Forest Service recently approved the Greater Red Lodge Area Vegetation and Habitat Management Project (the "GRLA Project" or "Project"), which authorizes extensive logging, burning, and road building on National Forest land in Carbon County, Montana on the Beartooth Ranger District of the Custer Gallatin National Forest.

2. This action seeks judicial relief with respect to the March 3, 2021 ROD, the 2015 FEIS, and 2020 FSEIS, ordering Defendants U.S. Forest Service, *et al.* to comply with the requirements of the National Environmental Policy Act (NEPA), 42 U.S.C. § 4331 *et seq.*, the National Forest and

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 1

Management Act (NFMA), 16 U.S.C. § 1600 *et seq.*, and the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq*. The decision approving the GRLA Project was arbitrary and capricious, an abuse of discretion, and/or otherwise not in accordance with law.

3. Plaintiffs request that the Court set aside the GRLA Project decision pursuant to 5 U.S.C. § 706(2)(a) and 16 U.S.C. § 1540(g) and enjoin implementation of the Project.

4. Plaintiffs seek a declaratory judgment, injunctive relief, an award of costs and expenses of suit, including attorney and expert witness fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 and such other relief as this Court deems just and proper.

## II. JURISDICTION

5. Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because this action arises under the laws of the United States and involves the United States as a defendant.

6. Plaintiffs submitted timely written comments and an objection concerning the Project and fully participated in the available administrative review processes, thus exhausting their administrative remedies. Defendants' issuance of the March 3, 2021 ROD was a final administrative action of the U.S. Forest Service. Thus, the Court has jurisdiction to review Plaintiffs' APA claims.

## III. VENUE

7. Venue is proper in this Court under 28 U.S.C. 1391. All or a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district, Defendants reside in this district, and the public lands and resources and agency records in question are located in this district.

## IV. PARTIES

8. Plaintiff Alliance for the Wild Rockies (the "Alliance") is a tax-exempt, non-profit public interest organization dedicated to the protection and preservation of the native biodiversity of

the northern Rockies bio-region; its native plant, fish, and animal life; and its naturally functioning ecosystems. Its registered office is located in Missoula, Montana. The Alliance has over 2,000 individual members, many of whom are located in Montana. The Alliance brings this action on its own behalf and on behalf of its adversely affected members.

9. Plaintiff Native Ecosystems Council is a non-profit Montana corporation with its principal place of business in Three Forks, Montana. Native Ecosystems Council is dedicated to the conservation of natural resources on public lands in the Northern Rockies. Native Ecosystems Council brings this action on its own behalf and on behalf of its adversely affected members.

10. Defendant United States Forest Service is an administrative agency within the U.S. Department of Agriculture and is responsible for the lawful management of our national forests, including the Custer Gallatin National Forest.

11. Defendant Randy Moore is named in his official capacity as Chief of the Forest Service.

12. Defendant Mary Erickson is named in her official capacity as Forest Supervisor of the Custer Gallatin National Forest.

13. Defendant Leanne Marten is named in her capacity as the Regional Forester for the Northern Regional Office, which is Region 1 of the U.S. Forest Service. In that capacity, she is charged with ultimate responsibility for ensuring that decisions made at each national forest in the Northern Region, including the Custer Gallatin National Forest, are consistent with applicable laws, regulations, and official policies and procedures.

### V.  STATEMENT OF STANDING

14. The interests at stake in this matter are germane to Plaintiffs' organizational purposes. Defendants' failure to prepare an adequate environmental impact statement and violations of the

Custer Gallatin Forest Plan and the agency's own regulations will harm plant, fish and animal life and natural ecosystems in the Custer Gallatin National Forest and thereby injure Plaintiffs' members who use and enjoy those resources.

15. Plaintiffs and their members observe, enjoy, and appreciate Montana's native wildlife, water quality, and terrestrial habitat quality, and expect to continue to do so in the future, including in the Project area in the Custer Gallatin National Forest. Members use and enjoy the waters, public lands, and natural resources throughout areas covered by the Project for work, recreational, scientific, spiritual, educational, aesthetic, and other purposes. Plaintiffs' members observe, enjoy, and appreciate Montana's native wildlife, water quality, and terrestrial habitat quality, and expect to continue to do so in the future, including in the Project area in the Custer National Forest. Plaintiffs and their members also participate in information gathering and dissemination, education and public outreach, commenting upon proposed agency actions, and other activities relating to the Forest Service's management and administration of these public lands.

16. Defendants' unlawful actions adversely affect Plaintiffs' organizational interests, as well as their members' use and enjoyment of the Custer Gallatin National Forest, including the Project area. The interests of Plaintiffs and their members have been and will continue to be injured and harmed by the Forest Service's actions and/or inactions as complained of herein. Unless the relief prayed for herein is granted, Plaintiffs and their members will continue to suffer ongoing and irreparable harm and injury to their interests.

17. The injuries to Plaintiffs are likely to be redressed by a favorable decision of this Court because Plaintiffs are seeking an order declaring that Defendants have violated NEPA, NFMA, and APA and enjoining the Forest Service from implementation of the Project. That would, in turn, protect

and preserve the natural areas and plant, fish and animal species the Plaintiffs' members use and enjoy until such time as the Forest Service proposes a project that complies with federal law.

## VI. FACTUAL ALLEGATIONS

18. The Record of Decision ("ROD" or "decision") to approve the GRLA Project was signed on March 3, 2021, by Forest Supervisor for the Custer Gallatin National Forest Mary Erickson.

19. The March 3, 2021 ROD relied upon an April 2015 Final Environmental Impact Statement ("FEIS") and a June 2020 Final Supplemental Environmental Impact Statement ("FSEIS").

20. The GRLA Project will allow, among other things, commercial logging, non-commercial thinning, road building and burning in the Beartooth Ranger District of the Custer Gallatin National Forest.

**The Affected Area**

21. The Project area is located in the Beartooth Mountains in the Greater Yellowstone Area, in a mountainous region of south-central Montana, west of Red Lodge, Montana.

22. The Project area encompasses West Red Lodge Creek, Nichols Creek, and Willow Creek (near Palisades Campground) and includes approximately 21,871 acres (10,275 acres in Red Lodge Creek and 11,596 acres in Willow-Nichols Creek).

23. Forested stands in the Project area are predominately mature lodgepole pine with small inclusions of aspen, spruce, subalpine fir, and Douglas fir.

24. The Project area is highly valued by people living and recreating in and around the area.

25. The Project area provides habitat for grizzly bears, moose, and elk and is designated critical habitat for lynx.

26. The Project area has very high wildlife values, including for threatened grizzly bear, lynx, moose, elk, and other wildlife.

**The Project Approval Process**

27. In April 2014, Defendants United States Forest Service, *et al*. (collectively, the "Defendants") issued a Draft Environmental Impact Statement (DEIS) for the GRLA Project.

28. Plaintiffs submitted timely comments to the DEIS.

29. In April 2015, Defendants issued a Final Environmental Impact Statement (FEIS) for the Project.

30. In May 2015, the Forest Supervisor signed two records of decision. One decision was for Nichols Creek Road reconstruction and one decision was for vegetation management activities in Red Lodge Creek and Willow-Nichols Creek area.

31. Plaintiffs bought suit following the 2015 RODs (Case No. CV-15-99-M-DLC). The District Court granted Plaintiffs a preliminary injunction in November 2016 (Case No. CV-15-99-M-DLC, ECF 66) and the Forest Supervisor withdrew the 2015 RODs in 2017.

32. In December 2019, the Forest Service issued a Draft Supplemental Environmental Impact Statement (DSEIS) for the Project.

33. Plaintiffs timely commented on the DSEIS.

34. In June 2020, the Forest Service issued a Final Supplemental Environmental Impact Statement (FSEIS) for the Project.

35. Plaintiffs timely objected to the FSEIS.

36. After Plaintiffs submitted timely objections, Defendants issued a Record of Decision (ROD) approving the GRLA Project on March 3, 2021.

37. The 2021 ROD adopted "Alternative 2/3 Modified" from the FSEIS.

38. Alternative 2/3 Modified includes commercial logging, including thinning and clearcuts, on 1,132 acres and non-commercial logging and burning on 675 acres in the Red Lodge Creek and Willow-Nichols Creek area.

39. Alternative 2/3 Modified includes 25.7 miles of road construction, deconstruction, maintenance and modified road designations in the Project area.

40. The Project concentrates logging, burning, and roading activity within some of the best remaining wildlife habitat in the landscape.

**The Wildland Urban Interface**

41. In the FEIS and FSEIS, the Forest Service represented that all of the areas proposed for treatment are within the Wildland Urban Interface (WUI) based on the mapping of those areas in the Carbon County Community Wildfire Protection Plan (CWPP).

42. The Project area includes large areas where there are zero homes, structures, or roads at risk. These areas lack the group of homes or other structures that are exposed to a significant threat to human life or property.

43. The WUI zone defined by the Forest Service includes an arbitrary buffer inside the boundary regardless of whether structures or roads are nearby or at risk.

44. The Forest Service did not properly assess or disclose information about the WUI and logging units within those designated areas in the FEIS or FSEIS.

45. All areas proposed for treatment by the Project do not fall within the Wildland Urban Interface as defined by law and Forest Service maps.

46. All areas proposed for treatment by the Project do not fall within the Wildland Urban Interface as defined by the Forest Service's Northern Rockies Lynx Management Direction map.

**Environmental Impacts**

47. The Project will cause significant adverse environmental impacts to grizzly bears, lynx, elk, and moose as a result of the activities associated with the project implementation and as a result of the longer-term effects of the project activities after they have been completed.

*Grizzly Bear, Elk, and Moose*

48. The FEIS and FSEIS do not provide full and fair discussion of significant adverse environmental impacts to elk, grizzly bear, and moose caused by the Project.

49. The temporal period considered for the grizzly bear, moose, elk, and lynx effects analysis in the FEIS and FSEIS is up to ten years.

50. The probable significant adverse environmental impacts caused by the Project activities to grizzly bear, moose, elk, and lynx and their habitat will extend beyond ten years.

51. Elk are a designated key species under the Custer Forest Plan.

52. Moose are a designated public interest species under the Custer Forest Plan.

53. The Project area provides fall, winter, and spring range for elk and moose.

54. Two elk herds use the Project area: Silver Run and Butcher Creek.

55. After issuance of the 2015 FEIS, the Montana Department of Natural Resources and Conservation (DNRC) completed an aggressive logging operation, called the Palisades Timber Sale Project, adjacent to the Forest Service lands at issue in the GRLA Project.

56. The 789-acre Palisades Timber Sale Project included large clear-cuts.

57. While narrow wildlife travel corridors were part of DNRC's plan for the Palisades Timber Sale, those corridors largely disappeared during subsequent wind events. Consequently, large

acreages of land immediately adjacent to the GRLA Project no longer function as productive wildlife habitat.

58. Elk and grizzly bear security has been broadly impacted in a negative way by the Palisades Timber Sale and subsequent loss of wildlife travel corridors.

59. Moose fall, winter and spring habitats were severely impacted by the Palisades Timber Sale and subsequent loss of wildlife travel corridors, and moose numbers may well be declining as a result.

60. The 2015 FEIS and 2020 FSEIS for the GRLA Project did not take a hard look at the impacts of the Palisades Timber Sale and the subsequent loss of wildlife habitat on state lands adjacent to the GRLA Project area on wildlife and wildlife habitat.

61. The 2015 FEIS and 2020 FSEIS for the GRLA Project incorrectly assume that the wildlife travel corridors that were part of DNRC's plan for the Palisades Timber Sale remain and function as productive wildlife habitat.

*Lynx*

62. The Canada Lynx is an ESA-listed threatened species that is present on the Forest.

63. Canada Lynx may be present in the Project area and lynx critical habitat is present in the project area.

64. In accordance with the Lynx Conservation Assessment and Strategy (2000), four Lynx Analysis Units were identified and mapped on the Custer National Forest, all on the Beartooth Ranger District.

65. The majority of the Project is within the Rock Creek Lynx Analysis Unit, but the northwestern corner of the Project is in the Rosebud Lynx Analysis Unit.

66. The Northern Rockies Lynx Management Direction (Lynx Amendment) was completed in 2007 and amended 18 Forest Service Northern Region Forest Plans, including the Custer Forest Plan.

67. The Forest Service acknowledges that the Project will violate the Lynx Amendment unless the agency can demonstrate that the Project occurs within the WUI. Thus, the agency asserts that all proposed treatment units are located in a designated WUI, and therefore changes in lynx habitat are exempted from Lynx Amendment Standards VEG-S5 and VEG-S6.

68. The Lynx Amendment and its Biological Opinion/Incidental Take Statement allow unrestricted logging in the wildland urban interface, which the agencies estimate to compose approximately 6% of the lynx habitat on National Forests.

69. The Lynx Amendment mapped the WUI under several definitions - for both interface and intermix communities - and showed its relation to lynx habitat.

70. The Lynx Amendment map indicates that not all of the Project area is within the WUI.

71. The Lynx Amendment map also indicates the location of "lynx habitat" with gray/beige shading.

72. The Forest Service map of "lynx habitat" for the Project showed a smaller portion of the Project area as containing lynx habitat.

73. The legal definition of "lynx habitat" is found within the Lynx Amendment, which is part of the Custer Forest Plan:

> Lynx habitat - Lynx habitat occurs in mesic coniferous forest that experience cold, snowy winters and provide a prey base of snowshoe hare. In the northern Rockies, lynx habitat generally occurs between 3,500 and 8,000 feet of elevation, and primarily consists of lodgepole pine, subalpine fir, and Engelmann spruce. It may consist of cedar-hemlock in extreme northern Idaho, northeastern Washington and northwestern Montana, or of Douglas-fir on moist sites at higher elevations in central Idaho. It may also consist of cool, moist Douglas-

fir, grand fir, western larch and aspen when interspersed in subalpine forests. Dry forests do not provide lynx habitat. (LCAS)

74. The dominant cover type in the Project area is early seral lodgepole pine mix.

75. Spruce, subalpine fir and Douglas fir are regenerating and establishing underneath the lodgepole pine, creating multiple canopy layers.

76. This mature lodgepole pine forest with a mix of Douglas-fir, spruce, or subalpine fir in the Project area fits the definition of "lynx habitat" as defined and adopted into the Custer Forest Plan under the Lynx Amendment.

77. The Forest Service did not use the Lynx Amendment definition and map to disclose and analyze impacts to lynx habitat in the Project area.

78. Instead, the Custer National Forest produced an internal document, which it refers to as "Canfield 2016," that sets forth a new definition and mapping protocol for lynx habitat on the Custer National Forest. This new map only includes spruce and subalpine fir and moist Douglas-fir (where it occurs within 656 feet of primary habitat) and excludes all elevations below 6,000 feet, among other changes. This map was the map of "lynx habitat" the Forest Service used to analyze and disclose the impact of the Project on lynx.

79. By remapping lynx habitat on the Custer National Forest, the Forest Service eliminated Lynx Amendment protections for a large percentage of the 232,689 total acres of lynx habitat on the Forest.

80. In the Lynx Analysis Units affected by the Project area, the agency eliminated Lynx Amendment protections for large percentages of the lynx habitat in the Rock Creek Lynx Analysis Unit and of the lynx habitat in the Rosebud Lynx Analysis Unit.

81. Under the Forest Service's remapping of lynx habitat, fewer acres of lynx habitat in the Project area are protected by Lynx Amendment standards VEG S5 and VEG S6.

82. The agency does not disclose how much lynx habitat will be logged under the Lynx Amendment definition and map of lynx habitat.

83. The Forest Service's remapping of lynx habitat on the Custer National Forest and attendant elimination of Lynx Amendment protections for a significant amount of lynx habitat on the Forest was not analyzed in an EIS or other NEPA analysis, and did not undergo ESA consultation.

84. In the Project EIS, the agency did not clearly disclose to the public that it had decided to "map out of existence" and ignore large percentages of lynx habitat in the Rock Creek Lynx Analysis Unit and Rosebud Lynx Analysis Unit in its calculations and analysis of how the Project affects lynx habitat.

85. The Project EIS does not address the impact on lynx from removing Lynx Amendment protections on tens of thousands of acres in the Custer National Forest and Project area.

86. The Forest Service also uses its new definition of lynx habitat in its analysis of lynx critical habitat.

87. In lynx critical habitat, one of the primary constituent elements (Primary Constituent Element 1a) is boreal forest that provides snowshoe hare habitat.

88. The most recent lynx critical habitat rule defines boreal forest that provides lynx habitat in the Northern Rocky Mountains: "The dominant vegetation that constitutes lynx habitat in these areas is subalpine fir (A. lasiocarpa), Engelmann spruce, and lodgepole pine (Aubry et al. 2000, p. 379; Ruediger et al. 2000, pp. 4-8 -4-10). Within the boreal forest landscape, lodgepole pine is seral to (i.e., is an earlier successional stage) subalpine fir and Engelmann spruce, which are climax forest habitat types." 79 Fed. Reg. 54807 (September 12, 2014) (emphasis added).

89. In the agency's analysis, it ignores the definition from the Federal Register lynx critical habitat rule, and instead creates its own definition for "boreal forest" that matches its "lynx habitat" remapping protocol and excludes all but spruce and subalpine fir.

90. After remapping and redefining "lynx habitat" and the primary constituent elements of lynx critical habitat, as discussed above, Defendants assert that the Project "may affect, but is not likely to adversely affect" the threatened Canada lynx and lynx critical habitat.

91. The Forest Service provides the following rationale for its Project determination for lynx: "1) Effects to lynx forage would be negligible [;] 2) Changes in the acreage of each structural stage would be negligible[;] 3) The project is in compliance with the Northern Rockies Lynx Management Direction[;] and 4) There would be no cumulative effects."

92. The Forest Service provides the following rationale for its Project determination for lynx critical habitat: "1) Reduction and removal of snowshoe hare habitat would be negligible on a scale proportionate to the large landscape used by lynx[;] 2) There would be no permanent loss or conversion of boreal forest[;] 3) Potential effects to the PCEs would be negligible[;] and 4) There would be no cumulative effects to lynx critical habitat.

### VII. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### VIOLATION OF NEPA AND THE APA

93. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

94. The National Environmental Policy Act of 1969, commonly known as NEPA, is "our basic national charter for protection of the environment." 40 C.F.R. § 1500.1(a) (2006).

95. NEPA requires federal agencies "to the fullest extent possible" to prepare an environmental impact statement (EIS) for every major Federal action significantly affecting the quality

of the human environment." 42 U.S.C. § 4332(2)(C). An EIS must "provide full and fair discussion of significant environmental impacts and shall inform decisionmakers and the public of the reasonable alternatives which would avoid or minimize adverse impacts or enhance the quality of the human environment." 40 C.F.R. § 1502.1. Under NEPA, an EIS must take a hard look at environmental impacts, which includes considering all foreseeable direct and indirect impacts, without improperly minimizing negative side effects. An EIS must take a hard look at "[t]he degree to which the action may adversely affect an endangered or threatened species." 40 C.F.R. § 1508.27(b)(9).

96. Defendants failed to take a hard look at the Project's significant adverse environmental impacts to wildlife and wildlife habitat and failed to provide a full and fair discussion of those impacts.

97. The 2015 FEIS and 2020 FSEIS for the GRLA Project erred when it limited the temporal period considered for the wildlife effects analysis to up to ten years. The effects to wildlife and wildlife habitat will extend beyond the expected time frame for the activities associated with project implementation.

98. The 2015 FEIS and 2020 FSEIS for the GRLA Project fail to identify and evaluate the direct, indirect, and cumulative impacts of the Project as required by NEPA. 40 C.F.R. § 1508.

99. The 2015 FEIS and 2020 FSEIS fail to adequately analyze cumulative environmental impacts because they do not take into account the recent impacts to wildlife habitat from the Palisades Timber Sale and the subsequent loss of wildlife habitat on state lands adjacent to the GRLA Project area.

100. Defendant's actions as described above are arbitrary, capricious, not in accordance with law, and without observance of procedures required by law, within the meaning of the APA, 5 U.S.C. § 706.

**SECOND CLAIM FOR RELIEF**

**VIOLATION OF NEPA, NFMA, NEPA, and APA**

101. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

102. In 2016, the Forest Service chose to remap lynx habitat in the Forest, thereby removing Lynx Amendment protections on a significant amount of area within the Custer National Forest.

103. There is no NEPA analysis for the 2016 remapping, either in a stand-alone format, or at a cumulative landscape scale within the analysis for the Project.

104. The Forest Service's remapping of lynx habitat on the Custer National Forest constitutes a major federal action under NEPA because it is a document prepared by the agency that guides or prescribes uses of federal resources, upon which future agency actions will be based. The new mapping categorizes thousands of acres of lynx habitat out of existence and thereby paves the way for future projects to authorize logging and other activities in those areas, even if those activities are prohibited under the Lynx Amendment.

105. Accordingly, the Forest Service must prepare NEPA analysis for the decision to remap lynx habitat on the Custer National Forest and remove protections for over 117,000 acres of lynx habitat.

106. The most logical way to conduct this analysis is with a Forest Plan amendment to amend the Custer Forest Plan's adoption of the Lynx Amendment; this is the route chosen by the adjacent Caribou-Targhee National Forest to adopt its own recent remapping of lynx habitat.

107. Until the Forest Service completes NEPA analysis for the 2016 remapping of lynx habitat on the Custer National Forest, the Project must be enjoined because the Project analysis of impacts to lynx and lynx critical habitat is premised upon the acceptance and implementation of the

new map of lynx habitat. The Project unlawfully tiers to the new map because there has been no NEPA analysis for that remapping yet.

108. The agencies' analyses ignore the definitions from the Lynx Amendment and lynx critical habitat rule and fail to fully and fairly disclose and meaningfully discuss the issue of remapping lynx habitat in the EIS. The EIS documents do not disclose that the analysis of impacts to lynx and lynx critical habitat is completely premised on a new map that eliminates significant percentages of the lynx habitat in the affected Lynx Analysis Units. The EIS documents do not disclose the impacts on lynx from removing significant portions of its habitat from protection. The EIS documents do not acknowledge or demonstrate compliance with the map or definition of lynx habitat from the Lynx Amendment, or acknowledge or disclose that the Lynx Amendment itself maps a larger area as lynx habitat, including more acres that will be logged by the Project. The EIS documents do not disclose how much lynx habitat would be impacted by the Project according to the map of lynx habitat from the Lynx Amendment. The EIS documents also fail to acknowledge the definition of boreal forest from the lynx critical habitat rule and disclose how many acres of lynx critical habitat would be logged under that definition.

109. The Project will cause significant adverse effects to lynx and/or lynx critical habitat. The Project will remove quantifiable acres of lynx habitat, displace lynx during the Project, and alter the ability of lynx to use habitat for decades due to their avoidance of clear-cuts and preference for winter habitat in mature, multi-story forests. The Project also relies on exemptions from the Lynx Amendment.

110. The Forest Service's use of the Lynx Amendment exemption for logging in the wildland urban interface is unlawful because all of the Project units do not fall within the wildland urban interface. Thus, the logging of lynx habitat violates the Forest Plan and NFMA.

111. For the reasons set forth above, the agencies' analyses, actions, and omissions regarding lynx and lynx critical habitat violate the ESA, NFMA, NEPA, and the APA.

### THIRD CLAIM FOR RELIEF

### VIOLATION OF NEPA, HFRA, AND THE APA

112. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

113. The Healthy Forest Restoration Act (HFRA) directs the Forest Service to take action to reduce wildfire risk and enhance efforts to protect watersheds and address threats to forest and rangeland health.

114. The HFRA defines Wild Urban Interface (WUI) as an area within or adjacent to an at-risk community that is identified in recommendations to the Secretary in a community wildfire protection plan. 16 U.S.C. § 6511(16)(A).

115. The HFRA also defines "at-risk communities" in 16 U.S.C. § 6511(1).

116. The Wildland Urban Interface used for the Project does not meet the HFRA statutory definitions for WUI areas and at-risk communities.

117. The mapping of WUI areas in the Carbon County Community Wildfire Protection Plan is not consistent with the definition of WUI areas in HFRA.

118. The mapping, definition, and information related to the Wildland Urban Interface areas was misleading, inadequate, and incorrect in the FEIS and FSEIS for the Project.

119. Defendants' actions as described above are arbitrary, capricious, not in accordance with law, and without observance of procedures required by law, within the meaning of the APA, 5 U.S.C. § 706.

### VIII. PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court grant the following relief:

A. Order, declare, and adjudge that the Defendants have violated the National Environmental Policy Act, the Administrative Procedure Act, and their implementing regulations as set forth above;

B. Order, declare, and adjudge that the Defendants have violated the National Forest Management Act, the Administrative Procedure Act, and their implementing regulations as set forth above;

C. Enjoin the Defendants from implementation of the Project;

D. Order the Defendants to withdraw the 2015 Final Environmental Impact Statement, 2020 Final Supplemental Environmental Impact Statement, and 2021 Record of Decision until such time as Defendants demonstrate to this Court that they have adequately complied with the law;

E. Award the Plaintiffs their costs, litigation expenses, expert witness fees, and reasonable attorneys' fees associated with this litigation pursuant to the Equal Access to Justice Act, and all other applicable authorities; and

F. Grant the Plaintiffs any such further relief as may be just, proper, and equitable.

Dated this 26th day of July, 2021.

Respectfully submitted, by:

ALLIANCE FOR THE WILD ROCKIES
NATIVE ECOSYSTEMS COUNCIL

By and through their counsel:

LAURA KING

By: /s/ Laura King
Laura King, MT Bar # 13574
7 Mergenthaler Road
Montana City, MT 59634
laurahelenking@gmail.com
ph: (909) 200-9776