1
2
3
4

Laura King, MT Bar # 13574
7 Mergenthaler Road
Montana City, MT 59634
laurahelenking@gmail.com
Phone: (909) 200-9776

5
6
7
8
9

Claudia M. Newman, WSBA No. 24928
Bricklin & Newman, LLP
123 NW 36th Street, Suite 205
Seattle, WA  98107
newman@bnd-law.com
Phone: (206) 264-8600

10

Attorneys for Plaintiffs

11
12
13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

14
15
16
17
18
19
20
21
22
23
24
25
26

ALLIANCE FOR THE WILD
ROCKIES, NATIVE
ECOSYSTEMS COUNCIL,

                           Plaintiffs,

        v.

UNITED STATES FOREST
SERVICE; RANDY MOORE,
Chief of the Forest Service; MARY
ERICKSON, Forest Supervisor for
the Custer Gallatin National Forest;
and LEANNE MARTEN, Regional
Forester for Region 1 for the U.S.
Forest Service,

                           Defendants.

NO. 9:21-cv-00084-DLC

PLAINTIFFS' BRIEF IN
SUPPORT OF MOTION FOR
SUMMARY JUDGMENT

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

FACTS ...................................................................................................................... 3

A.   The Greater Red Lodge Project will allow 10 years of logging, including clearcuts, of wildlife habitat for threatened and major interest species in the forest .............................. 3

B.   The Forest Service adopted the "Lynx Amendment" following the ESA listing of lynx as a threatened species ...................................................................................... 6

C.   Montana District Court previously enjoined the GRLA Project until completion of consultation under the ESA ................................................................................ 8

ARGUMENT ............................................................................................................ 10

A.   Plaintiffs have standing ................................................................................ 10

B.   Standard of review ........................................................................................ 12

C.   NEPA requires that agencies take a hard look at the environmental consequences of proposed actions ............................. 13

D.   The Forest Service violated NEPA when it failed to take a hard look at the environmental effects of revisions to lynx habitat maps ................................................................................ 15

E.   The Project EIS and ROD relied on incorrect mapping and information related to the wildland urban interface areas in violation of HFRA and NEPA .................................. 22

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

F.    The Project violates NFMA because the wildland urban interface areas were mapped incorrectly..............................................28

G.    The Forest Service failed to take a hard look at the wildlife impacts associated with the Palisades Timber Sale        ........................................................................................31

RELIEF        ........................................................................................34

CONCLUSION     ........................................................................................37

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

1

**TABLE OF AUTHORITIES**

2

3

<u>Cases</u>                                                                                          <u>Page</u>

4

*Alliance for Wild Rockies v. Higgins*, 535 F. Supp.3d 957
(D. Idaho 2021)......................................................................................... 12, 25

5

6

*Alliance for the Wild Rockies v. Pierson*, 2021 WL 3131315
(D. Idaho 2021)............................................................................................. 25

7

8

*Alliance for the Wild Rockies v. United States Forest Serv.*, 907
F.3d 1105 (9th Cir. 2018) .............................................................................. 29

9

10

*Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531 (1987) ............................. 36

11

*Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*, 462
U.S. 87 (1983)........................................................................................... 13, 14

12

13

*Blue Mountain Biodiversity Project v. Blackwood*, 161 F.3d 1208
(9th Cir. 1998)............................................................................................... 15

14

15

*Ctr. for Biological Diversity v. United States Forest Serv.*, 349
F.3d 1157 (9th Cir.2003)................................................................................ 15

16

17

*Checkosky v. S.E.C.*, 23 F.3d 452 (D.C. Cir. 1994)........................................... 34

18

*City of Tenakee Springs v. Clough,* 915 F.2d 1308
(9th Cir.1990)................................................................................................. 32

19

20

*Earth Island Inst. v. United States Forest Serv.*, 442 F.3d 1147
(9th Cir. 2006).............................................................................................. 23

21

22

*Ecological Rights Found. V. Pac. Lumber Co.*, 230 F.3d 1141
 (9th Cir. 2000)............................................................................................. 12

23

24

*Ecology Ctr. v. Castaneda*, 574 F.3d 652 (9th Cir. 2009).............................. 14, 32

25

26

*Envt'l Def. v. Leavitt*, 329 F.Supp. 2d 55 (D.C. Cir. 2004).................................... 35

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2000) ..................................................................................... 10

*Great Basin Mine Watch v. Hankins*, 456 F.3d 955 (9th Cir. 2006) ..................................................................................... 13

*Idaho Sporting Cong. v. Rittenhouse*, 305 F.3d 957 (9th Cir. 2002) ..................................................................................... 15

*Kern v. U.S. Bureau of Land Management*, 284 F.3d 1062 (9th Cir. 2002) .............................................................................. 14, 16, 17

*Klamath Siskiyou Wildlands Ctr. v. Boody*, 468 F.3d 549 (9th Cir. 2006) ..................................................................................... 12

*Klamath Siskiyou Wildlands Center v. National Oceanic and Atmospheric Administration*, 109 F. Supp. 3d 1238 (N.D. Cal. 2015) .................................................................................. 12, 35

*Lands Council v. McNair*, 537 F.3d 981 (9th Cir. 2008) (*en banc*) ................................................................................. 15, 32

*League of Wilderness Defenders v. Connaughton*, 752 F.3d 755 (9th Cir. 2014) ..................................................................................... 23

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................ 12

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) .............................................. 12

*Marsh v. Oregon Natural Resources Council*, 490 U.S. 360 (1989) ..................................................................................... 13

*Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ..................................................................................... 13

*Native Ecosystems Council v. U.S. Forest Service*, 418 F.3d 953 (9th Cir. 2005) ..................................................................................... 23

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

*Native Ecosystems Council v. U.S. Forest Service*, 866 F. Supp.
2d 1209 (D. Idaho 2012)..................................................16, 17, 20

*Native Ecosystems Council v. Weldon*, 697 F.3d 1043 (9th Cir.
2012) ........................................................................................29

*Natural Resources Defense Council, Inc. v. Securities and
Exchange Commission*, 606 F.2d 1031 (D.C. Cir. 1979).......................12

*Neighbors of Cuddy Mountain v. United States Forest Serv.*, 137
F.3d 1372 (9th Cir.1998) ................................................14, 31, 32

*Olympic Forest Coalition v. U.S. Forest Serv.*, 556 F. Supp. 2d
1198 (W.D. Wash. 2008)....................................................35

*Save the Yaak Comm. v. Block*, 840 F.2d 714 (9th Cir.1988) ................14

*Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*,
486 F.3d 638 (9th Cir. 2007) ..............................................35

*Sierra Club v. Bosworth*, 510 F.3d 1016 (9th Cir. 2007) .......................36

*WildWest Inst. V. Bull*, 547 F.3d 1162 (9th Cir. 2008)...........................23

Statutes and Regulations                                          Page

40 C.F.R. § 1502.1......................................................................15

40 C.F.R. § 1502.20....................................................................16

40 C.F.R. § 1506.13 (2020) .........................................................32

40 C.F.R. § 1508 .........................................................................34

40 C.F.R. § 1508.7.......................................................................32

40 C.F.R. § 1508.18(b)(2) ...........................................................21

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

40 C.F.R. § 1508.27(b)(9) ........................................................................................ 14

5 U.S.C. § 706........................................................................................... 22, 31, 34

5 U.S.C. § 706(2)(A) ............................................................................................ 34

5 U.S.C. § 706(2)(A), (C), (D) ............................................................................. 12

16 U.S.C. §1536(a)(2) .......................................................................................... 22

16 U.S.C. §§ 1600-1687 ....................................................................................... 29

16 U.S.C § 1604 ............................................................................................. 29, 30

16 U.S.C. §6501(1) .............................................................................................. 23

16 U.S.C. § 6511(1) ........................................................................................ 24, 25

16 U.S.C. § 6511(16)(A) ...................................................................................... 24

16 U.S.C. § 6514(a) ............................................................................................. 23

42 U.S.C. §§ 4321 *et seq* .................................................................................... 23

42 U.S.C. § 4332(1) ............................................................................................. 15

42 U.S.C. § 4332(2)(C) ........................................................................................ 13

<u>Other Authorities</u>                                                                                    <u>Page</u>

85 Fed. Reg. 43,304 (July 16, 2020) .................................................................... 32

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

# INTRODUCTION

This action challenges the Final Environmental Impact Statement (FEIS) and Record of Decision (ROD) for the Greater Red Lodge Area Vegetation and Habitat Management Project, a Forest Service decision authorizing 10 years of logging in the Custer Gallatin National Forest. This action challenges three major errors committed by Defendants in their review and approval of the Project.

First, the Project Environmental Impact Statement (EIS), which was prepared under the National Environmental Policy Act, did not adequately review the impacts of assuming that large portions of areas that had previously been designated as potential lynx habitat were no longer lynx habitat for purposes of assessing impacts of the Project on lynx and lynx habitat. According to extensive study following the listing of lynx as a threatened species under the Endangered Species Act (ESA), the primary vegetation that contributes to lynx habitat is lodgepole pine, subalpine fir, and Engelmann spruce. FS041611.  In addition, lynx habitat was said to occur between 3,500 and 8,000 feet of elevation. FS041795. However, the Forest Service changed the definition of lynx habitat for purposes of review of the Project's impacts to exclude lodgepole pine and to exclude elevations below 6,600 feet. FS040247-248. Coincidentally (or not) forested stands in the Project area are comprised predominantly of mature lodgepole pine, the very species that was excluded from the definition of lynx habitat in this new definition.

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

FS000466. By remapping lynx habitat, the Forest Service eliminated "Lynx Amendment" protections for potential lynx habitat within the Project area. Not only was the remapping inconsistent with the Lynx Amendment (and therefore the Forest Plan), but the Project EIS also did not adequately assess this issue in violation of the National Environmental Policy Act.

In addition, the assertion in Project documents that all of the proposed treatment units of the Project reside within the "wildland urban interface" is based on misleading, inadequate, and incorrect mapping and information regarding the wildland urban interface. The areas that the Project EIS and ROD deemed to be wildland urban interface areas are, in fact, not wildland urban interface as those areas are defined by federal law. Moreover, contrary to the assertions made otherwise by project proponents, the Red Lodge community is not at high risk of impacts from wildfire in the Project area. As one commentor stated, there are no hazardous fuels in the area being proposed for logging and the idea of casting that area as at risk from wildfire is "ludicrous." FS039904. Structure density in the Project area is less than one structure per square mile and there are large areas in the WUI/Project area that have zero structures. These areas lack the group of homes or other structures that are required to be at risk of a significant threat to human life or property to meet the federal definition of wildland-urban interface. Because the statutory definition of wildland urban interface was not

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

the basis for delineating the WUI's, the EIS and ROD violate the National Environmental Policy Act, the Healthy Forests Restoration Act, and the National Forest Management Act.

Finally, Project EIS for the Project did not take a hard look at the impacts of aggressive clear cut logging on state land that is adjacent to the Project area (the Palisades Timber Sale) on wildlife and wildlife habitat. The 2015 FEIS and 2020 FSEIS for the GRLA Project incorrectly assume that the wildlife travel corridors that were part of plan for the Palisades Timber Sale remain and function as productive wildlife habitat. In fact, they do not. As a result, the Project EIS fails to adequately identify and evaluate the direct, indirect, and cumulative impacts of the Project as required by the National Environmental Policy Act.

## FACTS[1]

**A.     The Greater Red Lodge Project will allow 10 years of logging, including clearcuts, of wildlife habitat for threatened and major interest species in the forest.**

The Greater Red Lodge Area Vegetation and Habitat Management Project (hereinafter referred to as the "GRLA Project" or "Project") will allow 10 years of

---

[1] The parties Proposed Case Management Plan indicated: "The parties agree that the Local Rule 56.1 requirement for the filing of a separate Statement of Undisputed Facts may be dispensed with in light of the nature of the case." Doc. 9. This court's Order dated December 7, 2021 adopted the parties joint case management plan. Doc. 10.

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

commercial logging, non-commercial thinning, road building and burning on approximately 21,871 acres in the Beartooth Mountains within the Custer Gallatin National Forest. FS039043. The commercial logging for the Project includes hundreds of acres of clearcutting. FS00025. The Project authorizes 1,132 acres of commercial logging, and an additional 675 acres of non-commercial burning and tree removal. FS039045. The Project is "financially inefficient" and will result in a net loss to the Forest Service, and the federal taxpayer, of over $500,000.00. FS000860-863.

The following map of the GRLA Project area is taken from FS039141:

### Appendix A: Map 1 Project Area



**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

The Project area is located approximately 2½ to 15 miles west of Red Lodge, Montana. FS025780.  Red Lodge has been named by National Geographic as one of America's 100 Best Adventure towns due to its access to outdoor recreational activities. FS000850. Local residents fear that logging and burning the forest "will have substantial and grave impacts on this area located just outside of one of the fastest developing tourist communities in Montana." *See, e.g.,* FS000104.

The Project has been described as devastating to the forest ecosystem. FS000440. The Project area provides high value habitat for grizzly bears, lynx, elk, and moose. FS000467; FS001015-7; FS001018-58; FS000561; FS000951; FS000961. Forested stands in the Project area are comprised predominantly of mature lodgepole pine. FS000466. The majority of the lodgepole pine in the Project area is about 100 years old, and spruce, subalpine fir and Douglas fir are regenerating and establishing underneath the lodgepole pine, creating multiple canopy layers. *Id.*

The grizzly bear and Canada lynx, which both occur in the Project area, are listed as threatened under the Endangered Species Act. FS00091; FS039096. The Project area provides fall, winter, and spring range for elk and moose. FS001015-1017; FS001018-1024. Two elk herds use the Project area: Silver Run and Butcher Creek. FS001018. Elk are a designated Major Interest (Key) species under the Forest Plan. FS001011. Moose are a designated Public Interest species under the Forest Plan. *Id.*

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

All of the logging that is proposed with the Project will occur within designated critical habitat for the Canada lynx. FS000561, FS000951. The threatened Canada lynx will be displaced during the Project, and the Project will alter the ability of lynx to use habitat for decades due to their avoidance of clearcuts and preference for winter habitat in mature, multi-story forests.

About four years ago, after the Final EIS was issued for the GRLA Project, the Montana Department of Natural Resources and Conservation (DNRC) completed an aggressive logging operation, called the Palisades Timber Sale Project, adjacent to the Project area. FS039108; FS039935. The 789-acre Palisades Timber Sale Project included large clear cuts. FS039935. The vegetative character of the landscape changed dramatically as a result of that logging. *Id.* While narrow wildlife travel corridors were part of DNRC's plan, those corridors largely disappeared during subsequent wind events. *Id.* Consequently, large acreages of land immediately adjacent to the proposed Forest Service project no longer function as productive wildlife habitat. *Id.* Elk and grizzly bear security has been broadly impacted in a negative way. *Id.* Moose fall, winter and spring habitats were severely impacted, and moose numbers may well be declining. *Id.*

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

1
2

## B.     The Forest Service adopted the "Lynx Amendment" following the ESA listing of lynx as a threatened species.

3
4

The United States Fish and Wildlife Service (FWS) listed the Canada lynx as

5

threatened under the Endangered Species Act (ESA) on March 24, 2000. FS039096.

6

Canada lynx are medium sized forest carnivores occupying northern forests with

7

abundant snowfall. FS006836. Lynx tend to have very large home ranges, varying from

8
9

about 15,000 to 30,000 acres or ten to 20 square miles. *Id*. They seem to prefer to move

10

through continuous forests, and have been observed to avoid large openings until

11

shrubs and trees provide enough cover to hide them. *Id*. Primary vegetation that

12
13

contributes to lynx habitat is lodgepole pine, subalpine fir, and Engelmann spruce.

14

FS041611. Simply put, their homes are mesic coniferous forests that have cold, snowy

15

winters and provide a prey base of snowshoe hare. FS041599. The distribution of lynx

16
17

is nearly coincident with that of snowshoe hares because snowshoe hares are the

18

primary prey of lynx, comprising 35-97% of their diet. FS041600.

19

In the final ESA rule, FWS concluded that the factor threatening the lynx was

20
21

the inadequacy of existing regulatory mechanisms, specifically the lack of guidance for

22

conservation of lynx on federal lands. FS041598. Thus, shortly after the ESA listing, a

23

team of Forest Service biologists and representatives developed a scientific document

24
25

called the Lynx Conservation Assessment and Strategy (2000), which focused on

26

consistent and effective conservation of lynx on federal lands based on the best

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

available science. FS041593-98. In that document, the authors provided an assessment of lynx status and risk and recommended conservation strategies in forest management. Among other things, the authors defined and identified potential lynx habitat and provided management recommendations. FS041610-613; FS040242 The authors also recommended that Lynx Analysis Units (LAU's) be identified so that the Forest Service would have small scale areas to facilitate analysis of the potential direct and indirect effects of project activities on lynx. FS041678; FS041682.

Seven years later, the Forest Service adopted the Northern Rockies Lynx Management Direction (2007). FS041728-798. This document, which is commonly referred to as the "Lynx Amendment," contained the official legal standards and guidelines for adoption into individual Forest Plans. *Id*. All told, the Lynx Amendment amended 18 Forest Service Northern Region Forest Plans, including the Custer Gallatin Forest Plan. FS039096; FS006832. With the adoption of the Lynx Amendment in 2007, the Custer Gallatin Forest Plan contained specific objectives, standards, and guidelines that were required by law to protect lynx from threats of logging and other forest management activities. FS039102.

### C.   Montana District Court previously enjoined the GRLA Project until completion of consultation under the ESA.

This is not the first time that the Custer Gallatin National Forest has issued a decision on the GRLA Project. The Forest Supervisor signed the first Record of

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

Decision authorizing the GRLA Project on May 19, 2015. FS000072. A Final Environmental Impact Statement (FEIS) for the Project was issued shortly beforehand, in April, 2015.

Plaintiff Alliance for the Wild Rockies bought suit following the first approval of the Project on several grounds, some of which are presented again in this matter (Case No. CV-15-99-M-DLC). FS039088. The District Court enjoined the Project (Case No. CV-15-99-M-DLC, ECF 66) in 2016 until completion of legally required consultation of effects on Canada lynx critical habitat pursuant to the Endangered Species Act. FS039089. The Forest Supervisor withdrew the first Record of Decision in January, 2017. *Id.*

Following completion of that consultation, the Forest Service issued a Final Supplemental Environmental Impact Statement (FSEIS) for the Project in June, 2020 and a new Record of Decision (ROD) approving the Project on March 3, 2021. FS039039; FS039079.  Plaintiffs are challenging the new ROD in addition to both the FEIS and FSEIS (which we refer to collectively as the "Project EIS") in this matter for the reasons provided herein below.

PLAINTIFFS' BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT - 9

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# ARGUMENT

## A.    Plaintiffs have standing.

Plaintiffs have standing to bring this case because their members have standing in their own right and the interests are germane to Plaintiffs' organizational purposes. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 181 (2000).

Alliance for the Wild Rockies is a non-profit public interest organization dedicated to the protection and preservation of the native biodiversity of the Northern Rockies Bioregion, its native plant, fish, and animal life, and its naturally functioning ecosystems. Declaration of Michael Garrity in Support of Plaintiffs' Motion for Summary Judgment (Feb. 11, 2022). Alliance member Terry Dokken and his wife own property that is bordered by the Custer Gallatin National Forest and Project logging is proposed to occur immediately adjacent to their property.  Declaration of Terry Dokken (Feb. 12, 2022). Alliance member Henry Dykema also owns property in the Custer Gallatin National Forest that will be directly and adversely impacted by Project activities. Declaration of Henry Dykema in Support of Plaintiffs' Motion for Summary Judgment (Feb. 7, 2022). Alliance members also use the Project area for recreation and other forest related activities. Dokken Dec., ¶ 6; Garrity Dec., ¶ ¶ 2-4.  They also value the area for its wildlife and aesthetic qualities. *Id.* Plaintiff members intend to continue their uses of the Project area. Dokken Dec., ¶ 11, Garrity Dec., ¶ 5.

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

Native Ecosystems Council is a tax-exempt, non-profit public interest organization dedicated to the protection and preservation of native wildlife and plant species of the Northern Rockies Bioregion. Declaration of Sara Jane Johnson (Feb. 11, 2022). Native Ecosystems Council member Sara Johnson is a wildlife biologist who was an employee for the Forest Service for 14 years, where her primary responsibility was to assess logging impacts on wildlife. *Id.*, ¶ 3.  In her capacity as Director of Native Ecosystem Council, Ms. Johnson has visited the Greater Red Lodge Project area in the past and has plans to visit the Project area again in near future to conduct wildlife habitat assessment and also to observe, enjoy, and appreciate the native wildlife, water quality, and habitat quality. *Id.*, ¶ 4.

The interests of Plaintiffs' members will be harmed if the Project proceeds because the GRLA Project proposes logging and burning activities in the areas that Plaintiffs' members use and enjoy and own property. Johnson Dec., ¶ 7, Dokken Dec., ¶¶ 5-10. *See also* FS000127. The Project will adversely impact the value of old forest habitats for wildlife and threatens Plaintiffs' members with concrete particularized injury to their aesthetic, recreational, scientific, spiritual, vocational, and educational interests in the area and in the wildlife in that area. The Forest Service's decision to authorize this project despite violations of law also harms Plaintiff members' interests

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

in having full and fair process and application of the laws that were adopted to protect their interests.

These imminent harms constitute concrete injury in fact, are fairly traceable to the actions taken by the Forest Service challenged in this litigation, and are redressable by the relief sought. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Ecological Rights Found. V. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000).

**B.      Standard of review.**

Because NEPA, HFRA, and NFMA do not provide a private right of action, judicial review of final agency decisions under those laws is governed by the Administrative Procedures Act (APA). *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990); *Alliance for Wild Rockies v. Higgins*, 535 F. Supp.3d 957, 967 (D. Idaho 2021). Under the APA, the court shall set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "short of statutory right," or found to be "without observance of procedure required by law."  5 U.S.C. § 706(2)(A), (C), (D); *Klamath Siskiyou Wildlands Ctr. v. Boody*, 468 F.3d 549, 554 (9th Cir. 2006).  The court's review of an agency's procedural compliance with statutory norms is an exacting one.  *Natural Resources Defense Council, Inc. v. Securities and Exchange Commission*, 606 F.2d 1031 (D.C. Cir. 1979).

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

Judicial review under this standard is to be "searching" and "careful" and should determine whether the decision was based upon a consideration of the relevant factors. *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378 (1989). An agency action should be overturned only when the agency has "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Under the APA, this Court may direct that summary judgment be granted to either party based upon review of the administrative record. *Great Basin Mine Watch v. Hankins*, 456 F.3d 955, 961 (9th Cir. 2006).

## C.    NEPA requires that agencies take a hard look at the environmental consequences of proposed actions.

The National Environmental Policy Act, commonly known as NEPA, requires federal agencies to prepare an environmental impact statement (EIS) for every major Federal action significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). NEPA is designed to ensure that federal agencies are aware of the impacts of their actions on the quality of the environment before they take those actions. NEPA was enacted with two purposes in mind, or "twin aims." *Id., citing Baltimore*

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

*Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 97 (1983). The first

places upon a federal agency the obligation to consider every significant aspect of the

environmental impact of a proposed action before taking that action. *Id., citing Kern v.*

*U.S. Bureau of Land Management*, 284 F.3d 1062, 1066 (9th Cir. 2002). Second,

NEPA ensures that the agency will inform the public that it has indeed considered

environmental concerns in its decision-making process. *Id., citing Baltimore Gas &*

*Elec. Co.*, 462 U.S. at 97.

A NEPA challenge requires a court to employ a 'rule of reason' to determine

whether the review contains a "reasonably thorough discussion of the significant

aspects of probable environmental consequences." *Neighbors of Cuddy Mountain v.*

*United States Forest Serv.*, 137 F.3d 1372, 1376 (9th Cir.1998) (citations omitted); *see*

*also Save the Yaak Comm. v. Block*, 840 F.2d 714, 717 (9th Cir.1988) (holding that

"agency action taken without observance of the procedure required by law will be set

aside"). Under this standard, "[r]eviewing courts evaluate an EIS to ensure that the

agency has taken a "hard look" at the environmental consequences of the proposed

action. *Ecology Ctr. v. Castaneda*, 574 F.3d 652, 657 (9th Cir. 2009). This includes a

hard look at "[t]he degree to which the action may adversely affect an endangered or

threatened species." 40 C.F.R. § 1508.27(b)(9). An EIS satisfies the NEPA hard look

requirement if it includes consideration of all foreseeable direct and indirect impacts

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

and provides a full and fair discussion of those environmental impacts. *Lands Council v. McNair*, 537 F.3d 981, 1001 (9th Cir. 2008) (*en banc*); *Idaho Sporting Cong. v. Rittenhouse*, 305 F.3d 957, 973 (9th Cir. 2002). The EIS must "provide full and fair discussion of significant environmental impacts and shall inform decisionmakers and the public of the reasonable alternatives which would avoid or minimize adverse impacts or enhance the quality of the human environment." 40 C.F.R. § 1502.1. NEPA "emphasizes the importance of coherent and comprehensive upfront environmental analysis to ensure informed decision making to the end that the agency will not act on incomplete information only to regret its decision after it is too late to correct." *Blue Mountain Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1216 (9th Cir. 1998) (*citation and internal punctuation omitted*).  The procedures prescribed both in NEPA and the implementing regulations are to be strictly interpreted 'to the fullest extent possible' in accord with the policies embedded in the Act." *Ctr. for Biological Diversity v. United States Forest Serv.,* 349 F.3d 1157, 1166 (9th Cir.2003) *quoting* 42 U.S.C. § 4332(1).

> **D.    The Forest Service violated NEPA when it failed to take a hard look at the environmental effects of revisions to lynx habitat maps.**

The Project EIS is inadequate because it merely refers to new Custer Gallatin Forest lynx habitat maps that were revised to remove potential lynx habitat from legal protections without making any attempt to analyze the environmental effects of those

PLAINTIFFS' BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT - 15

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

revisions. Large portions of areas that had previously been designated as lynx habitat were no longer considered lynx habitat in the Project EIS for purposes of assessing impacts of the Project on lynx and lynx habitat. The new definition and mapping of potential lynx habitat requires NEPA review.

Avoiding detailed discussion of environmental impacts in an EIS by referring to another document containing the discussion, which is referred to as "tiering," is expressly permitted by federal regulation. 40 C.F.R. § 1502.20 ("Agencies are encouraged to tier their environmental impact statements to eliminate repetitive discussions of the same issues and to focus on the actual issues ripe for decision at each level of environmental review."). *See also Kern v. United States Bureau of Land Mgmt.*, 284 F.3d at 1073; *Native Ecosystems Council v. U.S. Forest Service*, 866 F. Supp. 2d 1209 (D. Idaho 2012). Yet "tiering to a document that has not itself been subject to NEPA review is not permitted, for it circumvents the purpose of NEPA." *Kern v. United States Bureau of Land Mgmt.*, 284 F.3d at 1062.

For example, in *Native Ecosystems Council,* the plaintiffs challenged an EIS that had been prepared by the Forest Service for a logging project, which authorized the pre-commercial thinning of approximately 7,000 acres of lodgepole pine located within the Caribou-Targhee National Forest. *Native Ecosystems Council v. U.S. Forest Service*, 866 F. Supp. 2d at 1209. The plaintiffs challenged the adoption of the 2005

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

Lynx Analysis Units (LAU) Map in the EIS on the grounds that it should have been subjected to NEPA review and the failure to conduct that review undermined the agency decisions related to authorization of the project. *Id.* at 1212. They argued that the authorization of the project based upon the 2005 LAU Map (which was not analyzed under NEPA) constituted improper tiering. The court agreed with plaintiffs and concluded that reliance on the LAU Map was improper tiering because the Forest Service had not completed NEPA review of the LAU Map before using that Map as a basis for approving the Split Creek project. *Id.* at 1227, *citing Kern v. U.S. Bureau of Land Management*, 284 F.3d 1062 (9th Circuit 2002).

The exact same error that occurred in *Native Ecosystems Council* has also occurred in this case. The GRLA Project review of lynx impacts was based upon a new lynx habitat definition and map that was not itself analyzed under NEPA.

As background, the GRLA Project FSEIS explains that there are two Lynx Analysis Units (LAUs) in the Project area: The Rock Creek LAU and the Rosebud LAU. FS039098 (*See* FS039101 for a map showing the location of these LAUs). The FSEIS states that the majority of the logging for the GRLA project will occur in the Rock Creek LAU. FS039099. The FSEIS asserts that of the 151,336 acres in the Rock Creek LAU, approximately 22% is potential lynx habitat. FS039098. The FSEIS also

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

claims that of the 160,101 acres in the Rosebud LAU, approximately 19% is potential lynx habitat. *Id*.

Following this description of the LAUs, the FSEIS assessed the Project impacts to the lynx and lynx critical habitat that it had identified as potential habitat within each of these LAUs. FS039103-116. Among other things, the FSEIS provided the reader with quantified amounts of lynx habitat that would be modified by the Project action and alternatives. FS039103-105. For example, it reported that 521 acres of potential lynx habitat would be modified in the Rock Creek LAU and 55 acres would be modified in the Rosebud LAU with Alternative 3. FS039105.

But the FSEIS impacts analysis was based on a new and revised definition of lynx habitat and map of potential lynx habitat that is described under the heading: "Data Sources, Methods, and Assumption." FS039097. This new definition and mapping was also described in the document: "Updating the lynx habitat map layer using the latest corporate standardized data and state-of-the-art GIS technology" dated November 17, 2016. FS040241-258. This latter document is referred to as "Canfield (2016)" in the FSEIS. FS039097.

This new definition and mapping is significantly different from the original lynx habitat mapping that had been developed under the Lynx Amendment. Gallatin Custer Forest developed its original lynx habitat maps in response to the ESA listing in 2007.

PLAINTIFFS' BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT - 18

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

FS040243. When the Lynx Amendment was adopted, the Forest Service mapped approximately 230,000 acres of potential lynx habitat on the Custer side of the National Forest. FS044454; FS007148; FS42538; FS040242-3. Those maps were based on the definition of lynx habitat provided in the Lynx Amendment (and therefore the Custer Gallatin Forest Plan), which was:

> Lynx habitat occurs in mesic coniferous forest that experience cold, snowy winters and provide a prey base of snowshoe hare. In the northern Rockies, lynx habitat generally occurs between 3,500 and 8,000 feet of elevation, and primarily consists of lodgepole pine, subalpine fir, and Engelmann spruce….

FS041795.

In contrast, the new definition and mapping protocol for lynx habitat that is described in Canfield 2016 and relied on for the FSEIS analysis of impacts excludes lodgepole pine forest and excludes all elevations below 6,600 feet from the definition of lynx habitat. FS040247-248; FS039097. According to this new definition, lynx habitat only includes spruce and subalpine fir and moist Douglas-fir (where it occurs within 656 feet of primary habitat) with an elevation band of 6,600 to 8,800 feet. FS040247-248. As an aside, it's worth noting that forested stands in the Project area are comprised predominantly of mature lodgepole pine, the very species that was excluded from the definition of lynx habitat in this new definition. FS000466.

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

By re-defining and remapping lynx habitat on the Custer National Forest in this manner, the Forest Service reduced mapped lynx habitat from 230,000 acres to 142,000 acres, thereby eliminating 88,000 (over 38%) of the total acres of assumed potential lynx habitat on the Forest. FS040247-248. In the Lynx Analysis Units affected by the Project, the Forest Service reduced lynx habitat in the Rock Creek LAU from 68,370 acres to 35,768, thereby eliminating 47% (32,602 acres) of that habitat. FS038393; FS040256. The Forest Service reduced the lynx habitat in the Rosebud LAU from 58,005 acres to 32,133, thereby eliminating 44% (25,872 acres) of that habitat. *Id.*

Because the standards in the Lynx Amendment apply only to mapped lynx habitat (FS41732), by remapping lynx habitat, the Forest Service has eliminated Lynx Amendment protections for 88,000 acres of potential lynx habitat within the Project area. The FSEIS does not disclose how many acres would be protected by standards in the Lynx Amendment under the former maps.

In this case, the Forest Service made precisely the same error that the federal agencies made in *Native Ecosystems Council.* Reliance on the revised lynx habitat definition and maps in the FSEIS violated NEPA's hard look requirements and constituted illegal tiering. The Forest Service cannot tier to previous review because the Forest Service did not complete NEPA review of the adoption of those new maps and revisions. The Forest Service's remapping of lynx habitat on the Custer National

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

Forest and attendant elimination of Lynx Amendment protections for a significant amount of lynx habitat on the Forest was not analyzed in an EIS or other NEPA analysis, and did not undergo ESA consultation.

The Forest Service's remapping of lynx habitat on the Custer Gallatin National Forest constitutes a major federal action under NEPA in and of itself because it is a document prepared by the agency that guides or prescribes uses of federal resources, upon which future agency actions will be based. 40 C.F.R. § 1508.18(b)(2). Regardless, the FSEIS did not clearly disclose to the public that it had decided to "map out of existence" and ignore large percentages of lynx habitat in the Rock Creek Lynx Analysis Unit and Rosebud Lynx Analysis Unit in its calculations and analysis of how the Project affects lynx habitat. The FSEIS does not disclose how much lynx habitat will be logged under the Lynx Amendment definition and map of lynx habitat. The FSEIS does not contain a full and fair discussion of the significant environmental impacts of the removal of protections for the threatened lynx species, nor does it take a hard look at the degree to which the action may adversely affect the threatened lynx species. The Forest Service did not provide an impacts analysis for the 2016 remapping, either in a stand-alone format, or at a cumulative landscape scale within the analysis for the Project. The FSEIS does not address the larger impact on lynx from removing

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

Lynx Amendment protections on tens of thousands of acres in the Custer National Forest and Project area.

Defendants' analyses, actions, and omissions regarding lynx and lynx critical habitat violate NEPA and their actions are arbitrary, capricious, not in accordance with law, and without observance of procedures required by law, within the meaning of the APA, 5 U.S.C. § 706. It was also authorized, funded, or carried out by a federal agency per 16 U.S.C. §1536(a)(2). The Forest Service must be ordered to prepare a NEPA analysis for the decision to remap lynx habitat on the Custer National Forest and remove protections for lynx habitat. Furthermore, until the Forest Service completes NEPA analysis for the 2016 remapping of lynx habitat on the Custer National Forest, the Project must be enjoined because the Project analysis of impacts to lynx and lynx critical habitat is premised upon the acceptance and implementation of the new map of lynx habitat.

### E.   The Project EIS and ROD relied on incorrect mapping and information related to the wildland urban interface areas in violation of HFRA and NEPA.

The Project EIS and ROD's claim that all of the proposed treatment units of the Project reside within the "wildland urban interface" is based on misleading, inadequate, and incorrect mapping and information regarding the wildland urban interface in violation of HFRA and NEPA.

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

HFRA "directs the Forest Service to take action to 'reduce wildfire risk' and 'enhance efforts to protect watersheds and address threats to forest and rangeland health.' *WildWest Inst. V. Bull*, 547 F.3d 1162, 1165 (9th Cir. 2008) (*quoting* 16 U.S.C. §6501(1)).  In satisfying its HFRA obligations, the Forest Service must also comply with the National Environmental Policy Act (NEPA), 42 U.S.C. §§4321 *et seq*. *Id*. (*citing* 16 U.S.C. 6514(a)).

The primary purpose of an EIS is to allow for informed public participation and informed decision making. *Earth Island Inst. v. United States Forest Serv*., 442 F.3d 1147, 1160 (9th Cir. 2006). "An agency may not rely on incorrect assumptions or data in an EIS." *Native Ecosystems Council v. U.S. Forest Serv.*, 418 F. 3d 953, 964 (9th Cir. 2005). "Informed public participation in reviewing environmental impacts is essential to the proper functioning of NEPA." *League of Wilderness Defenders v. Connaughton*, 752 F.3d 755, 761 (9th Cir. 2014).

The Project EIS contained misleading, inadequate, and incorrect mapping and information related to the wildland urban interface areas in violation of NEPA. The information provided in the EIS is incorrect for several reasons, but the central problem is that the areas that the EIS deems to be wildland urban interface areas are, in fact, not wildland urban interface as those areas are defined by federal law.

The HFRA defines "wildland urban interface," in relevant part, as:

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

1
2
3

…[A]n area within or adjacent to an at-risk community that is identified in recommendations to the Secretary in a community wildfire protection plan; …

4

16 U.S.C. § 6511(16)(A).

5

The term "at-risk community" means an area--

6
7

(A)    that is comprised of—

8
9
10
11
12

(i) an interface community as defined in the notice entitled "Wildland Urban Interface Communities Within the Vicinity of Federal Lands That Are at High Risk From Wildfire" issued by the Secretary of Agriculture and the Secretary of the Interior in accordance with title IV of the Department of the Interior and Related Agencies Appropriations Act, 2001 (114 Stat. 1009) (66 Fed. Reg. 753, January 4, 2001); or

13
14
15

(ii) a group of homes and other structures with basic infrastructure and services (such as utilities and collectively maintained transportation routes) within or adjacent to Federal land;

16
17

(B) in which conditions are conducive to a large-scale wildland fire disturbance event; and

18
19

(C) for which a significant threat to human life or property exists as a result of a wildland fire disturbance event.

20

16 U.S.C. § 6511(1).

21
22
23
24
25
26

In a recent case similar to this one, an Idaho District court held that the Forest Service cannot rely exclusively on a county determination of the wildland urban interface while disregarding HFRA's definition of the wildland urban interface in 16 U.S.C. § 6511(16)(A), including whether the Project area is in or adjacent to an "at-risk

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

community" as defined by HFRA in 16 U.S.C. § 6511(1). *Alliance for the Wild Rockies v. Pierson*, 2021 WL 3131315 (D. Idaho 2021). *See also Alliance for the Wild Rockies v. Higgins*, 535 F. Supp. 3d at 977-979.

In this case, the Forest Service made precisely that same error when it relied exclusively on the delineation of the wildland urban interface in the Carbon County Community Wildfire Protection Plan (CWPP) and disregarded the statutory definitions in HFRA. FS039130. The Forest Service has argued, incorrectly, that a County's wildfire protection plan can be relied upon in assessing the WUI even if the County's plan defines the WUI differently than HFRA. That argument is untenable and inconsistent with the plan language and legislative intent of HFRA. *See Alliance for the Wild Rockies v. Pierson*, 2021 WL 3131315 (D. Idaho 2021); *Alliance for the Wild Rockies v. Higgins*, 535 F. Supp. 3d at 977-979 (D. Idaho 2021). If the Forest Service's position were upheld, then any County could declare any area as WUI and thereby unilaterally and arbitrarily create areas that are exempt from federal protections based on their WUI status. *Alliance for the Wild Rockies v. Higgins*, 535 F. Supp. 3d at 979.

Although project proponents claim that the GRLA Project is necessary because the Red Lodge community is at "high risk" of impacts from wildfire (*See* FS039931; FS039131; FS039089), the evidence does not support that claim. On a big picture level, most of the Project activities will occur in the Red Lodge Creek area, which is notably

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

a far distance from Red Lodge. FS039907; FS039141. Moreover, the Project area seldom burns, partly because of annual precipitation of 25-30 inches and partly due to the north facing aspect of this land bordering the Beartooth Plateau. Dokken Dec., ¶ 12; FS000466. As one commentor stated, there are no hazardous fuels in the area being proposed for logging and the idea of casting that area as at risk from wildfire is "ludicrous." FS039904.

On a more precise legal level, the WUI utilized for the Project is not consistent with the legal definition of WUI in HFRA. The Carbon County CWPP was prepared by Carbon County Disaster and Emergency Services in January, 2013. *See* FS010461; FS010588-FS010641. When it mapped the WUI in that Plan, the County did not employ the HFRA definition. *See* FS010610-619. The CWPP, which refers to (but does not use) the 2001 Federal Register definition of wildland urban interface, indicates that the WUI situation in Carbon County most resembles the "Intermix Community." FS010610. The minimum structure density as defined in the Federal Register for the Intermix Community is "1 or more structures per 40 acres." FS010610.  This equates to at least 16 structures per square mile. A 16 square mile block, which starts at the wilderness boundary and extends to highway 78 on the north and encompasses that part of the Project centered along the Upper Red Lodge Creek Road, contains approximately 100 structures for a structure density of 0.4 acres per 40 acres. FS039907. The CWPP

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

states that there are 2,552 structures in the 258 square miles that the Plan identifies as WUI. FS010616. *See also* FS039907. That is 0.6 structures per 40 acres – well below the 1 per 40 acres required to qualify as WUI under the federal definition. *Id.*

The Draft and Final EISs for the Project also include a map that shows, in no uncertain terms, that structure density in the Project area is less than one structure per square mile. *See* FS003469; FS000591. In fact, that map shows that there are large areas in the WUI/Project area that have zero structures. FS000591; FS010617. These areas lack the group of homes or other structures that are required to be at risk of a significant threat to human life or property to meet the federal definition of wildland urban interface.

Indeed, The Carbon County CWPP itself admits that the WUI that they delineated is not consistent with the HFRA definition. The CWPP admits outright that most of the areas that the County delineated as WUI have a structure density less than one per 40 acres and, therefore, do not meet the Federal Register definition of "at-risk communities." FS010610. Also, in the CWWP, the County includes a picture of a "regional" WUI map that was prepared by the Forest Service using criteria identified in the Federal Register (FS010611) and then explicitly states that it's rejecting that map and creating its own new "county" map. The County applied an arbitrary 1.5 mile buffer

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

on the interior of the boundary of the WUI in that map with no apparent rational other than "capturing areas within the WUI." FS010612.

In addition, a lynx habitat/wildland urban interface map prepared by the Forest Service for the Lynx Amendment (FS001262) indicates that not all of the Project area is within the wildland urban interface, which is indicated on the map with green, red, or blue shading, or in a circle around a town. FS042538

Defendants' actions are arbitrary, capricious, not in accordance with law, and without observance of procedures required by law, within the meaning of the APA, 5 U.S.C. § 706. Because the statutory definition of wildland urban interface was not the basis for delineating the WUI's, the EIS and ROD violate NEPA and HFRA. The Forest Service must be ordered to vacate the ROD, withdraw the FEIS and FSEIS, delineate the WUI properly according to law, and prepare a new EIS for the Project based on the correct WUI information and mapping. Until the Forest Service completes this review, the Project must be enjoined.

**F.      The Project violates NFMA because the wildland urban interface areas were mapped incorrectly.**

The Forest Service's use of the Lynx Amendment exemption for logging in the wildland urban interface is unlawful under the National Forest Management Act because it is based on incorrect mapping and information related to the WUI, which, in

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

turn, caused violations of several standards that are required for protection of lynx in the Lynx Amendment.

The National Forest Management Act (NFMA), 16 U.S.C. §§ 1600-1687, charges the Forest Service with the management of national forest land, including planning for the protection and use of the land and its natural resources. *Alliance for the Wild Rockies v. United States Forest Serv.*, 907 F.3d 1105, 1109 (9th Cir. 2018). Under NFMA, forest land management occurs on two levels: (1) the forest level, and (2) the individual project level. *Id*. at 1109, *citing Native Ecosystems Council v. Weldon*, 697 F.3d 1043, 1056 (9th Cir. 2012). On the forest level, each planning unit of the National Forest system is managed under a "Land and Resource Management Plan," which is commonly referred to as a "forest plan." 16 U.S.C § 1604. Forest plans are strategic documents describing the overall management direction for a national forest. *Id*. Specific logging projects, such as the GRLA Project, must be consistent with the forest plan – the project must be carried out as directed by the goals, objectives, standards, and guidelines set forth in the forest plan. *See* 16 U.S.C. §1604; *Alliance for the Wild Rockies v. United States Forest Serv.*, 907 F.3d 1105, 1112 (9th Cir. 2018).

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

The Custer Gallatin National Forest is managed in accordance with the Custer National Forest Plan, which was adopted in October, 1986.[2] FS004509. The Custer Forest Plan provides forest-wide long-term management direction in the form of goals, objectives, standards, and guidelines designed to guide land and species management activities in the Custer National Forest. *Id. See also*, 16 U.S.C. §1604. The standards and management direction in the Lynx Amendment are incorporated into the Custer Forest Plan. FS000975. Therefore, a violation of the Lynx Amendment is a violation of the Custer Forest Plan.

The Lynx Amendment allows exemptions for lynx protections within the wildland urban interface that amounts to unrestricted logging in those areas. FS041785-7. The Forest Service acknowledges that the Project will violate the Lynx Amendment unless the agency can demonstrate that the Project occurs within the WUI. FS039107.The Project FSEIS states: "All of the GRLA treatment units are in designated WUI; therefore, modification to potential lynx habitat are exempted from [Lynx Amendment] Standards VEG S1, VEG S2, VEG S5 and VEG S6 for up to 7,775 acres or six percent of potential lynx habitat on the Custer National Forest." *Id. See also* FS041785-7.

---

[2] The Custer Gallatin National Forest adopted a new forest plan in 2020 but the GRLA Project was reviewed by the Forest Service under the 1986 Forest Plan. FS039044.

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

But to obtain this exemption, the WUI must be mapped "as defined by HRFA." FS041785-7. As demonstrated above, the WUI that the Forest Service is relying on for its exemptions from the Lynx Amendment protections was not mapped according to the HFRA definition. The agency's assertion that all proposed treatment units are located in a designated WUI and therefore changes in lynx habitat are exempted from Lynx Amendment standards is, therefore, incorrect.

Because the HFRA statutory definition of wildland urban interface was not employed in mapping the WUI, Defendants' failure to abide by the Lynx Amendment requirements violated NFMA and is arbitrary, capricious, not in accordance with law, and without observance of procedures required by law, within the meaning of the APA, 5 U.S.C. § 706. The Forest Service must be ordered to vacate the ROD, delineate the WUI properly according to law, and reassess the Project's consistency with the Lynx Amendment management direction based on the correct WUI information and mapping. Until the Forest Service completes this review, the Project must be enjoined.

**G.      The Forest Service failed to take a hard look at the wildlife impacts associated with the Palisades Timber Sale.**

As briefed in detail above, NEPA requires that the environmental review for a project contain a "reasonably thorough discussion of the significant aspects of probable environmental consequences." *Neighbors of Cuddy Mountain v. United States Forest Serv.*, 137 F.3d at 1376. An EIS must take a "hard look" at the environmental

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

consequences of the proposed action.  *Ecology Ctr. v. Castaneda*, 574 F.3d at 657. An

EIS satisfies the NEPA hard look requirement if it includes consideration of all

foreseeable direct, indirect, and cumulative impacts and provides a full and fair

discussion of those environmental impacts.  *Lands Council v. McNair*, 537 F.3d at

1001.

   "NEPA requires that where 'several actions have a cumulative ... environmental

effect, this consequence must be considered in an EIS.' *City of Tenakee Springs v.

Clough*, 915 F.2d 1308, 1312 (9th Cir.1990). "'Cumulative impact' is the impact on

the environment which results from the incremental impact of the action when added

to other past, present, and reasonably foreseeable future actions.... 40 C.F.R. § 1508.7."

*Neighbors of Cuddy Mountain v. U.S. Forest Serv.*, 137 F.3d at 1378.[3]

   The Project will cause significant adverse environmental impacts to grizzly

bears, lynx, elk, and moose as a result of the activities associated with the project

---

[3] The Council on Environmental Quality ("CEQ") adopted new NEPA regulations that became effective on September 14, 2020.  Update to the Regulations Implementing the Procedural Provisions of the National Environmental Policy Act, 85 Fed. Reg. 43,304, 43,304 (July 16, 2020); *see also* 40 C.F.R. § 1506.13 (2020). As the agency's decision here predated September 14, 2020, the Court should apply the cumulative effects analysis requirement under 40 C.F.R. § 1508.7 (repealed Sept. 14, 2020). Furthermore, "[t]he 2020 Rule's deletion of the definition of 'cumulative impacts' did not exclude reasonably foreseeable effects from consideration merely because they could be categorized as cumulative effects." National Environmental Policy Act Implementing Regulations Revisions, 86 FR 55757-01

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600
FAX. (206) 264-9300

implementation and as a result of the longer-term effects of the project activities after they have been completed.  The Project area provides fall, winter, and spring range for elk and moose. FS001015-1017; FS001018-1024. Two elk herds use the Project area: Silver Run and Butcher Creek. FS001018. Elk are a designated Major Interest (Key) species under the Forest Plan. FS001011. Moose are a designated Public Interest species under the Forest Plan. *Id.*

After issuance of the original FEIS for the Project, the Montana Department of Natural Resources and Conservation (DNRC) completed an aggressive logging operation, called the Palisades Timber Sale Project, adjacent to the Project area. FS039108; FS039935. The 789-acre Palisades Timber Sale Project included large clear cuts. FS039935. The vegetative character of the landscape changed dramatically as a result of that logging.  FS039935.  While narrow wildlife travel corridors were part of DNRC's plan, those corridors largely disappeared during subsequent wind events. *Id.* Consequently, large acreages of land immediately adjacent to the proposed Forest Service project no longer function as productive wildlife habitat. *Id.* Elk and grizzly bear security has been broadly impacted in a negative way.  *Id.* Moose fall, winter and spring habitats were severely impacted, and moose numbers may well be declining. *Id.*

The 2015 FEIS and 2020 FSEIS for the GRLA Project did not take a hard look at the impacts of the Palisades Timber Sale and the subsequent loss of wildlife habitat

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

on state lands adjacent to the GRLA Project area on wildlife and wildlife habitat. The 2015 FEIS and 2020 FSEIS for the GRLA Project incorrectly assume that the wildlife travel corridors that were part of DNRC's plan for the Palisades Timber Sale remain and function as productive wildlife habitat. As a result, the Project EIS fails to identify and evaluate the direct, indirect, and cumulative impacts of the Project as required by NEPA. 40 C.F.R. § 1508. Defendant's actions are arbitrary, capricious, not in accordance with law, and without observance of procedures required by law, within the meaning of the APA, 5 U.S.C. § 706.

## RELIEF

Based on the above-described violations of law, setting aside the final Record of Decision for the Project in addition to the EIS is warranted. Vacatur is the presumed remedy when an agency's action is found to be arbitrary, capricious, and/or not in accordance with the law. See 5 U.S.C. § 706(2)(A) ("The reviewing court shall … hold unlawful and set aside agency action, findings, and conclusions found to be… arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law").

For purposes of 5 U.S.C. § 706, the phrase "set aside" means to vacate. *See, e.g., Checkosky v. S.E.C.*, 23 F.3d 452, 491 (D.C. Cir. 1994) ("Setting aside means vacating; no other meaning is apparent"). In turn, the APA's use of the word "shall" indicates that vacatur is the presumed, normal, or default remedy for improper agency action.

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

*See, e.g., Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 486 F.3d 638, 654 (9th Cir. 2007) (Under the APA, the normal remedy for an unlawful agency action is to 'set aside' the action. In other words, a court should vacate the agency's action and remand to the agency to act in compliance with its statutory obligations). *See also Klamath Siskiyou Wildlands Center v. National Oceanic and Atmospheric Administration*, 109 F. Supp. 3d 1238, 1241 (N.D. Cal. 2015) ("When a court finds an agency's decision unlawful under the Administrative Procedures Act, vacatur is the standard remedy").

Vacating an agency's decision has the retroactive effect of restoring the status quo as if the decision had never been made. For example, when a Record of Decision has been vacated, the agency must then proceed as if it had never issued the ROD in the first place. *See Olympic Forest Coalition v. U.S. Forest Serv*., 556 F. Supp. 2d 1198, 1205 (W.D. Wash. 2008) (where the Forest Service's 2004 Record of Decision was vacated, the agency "was required to conduct [its new NEPA] analysis as if the . . . ROD had never been adopted"). *See also Envt'l Def. v. Leavitt*, 329 F.Supp. 2d 55, 64 (D.C. Cir. 2004) (holding that while EPA previously complied with a date-certain deadline for promulgating BART rules, vacatur of those rules "presented a situation wherein EPA had failed to promulgate regulations in accordance with the express deadline").

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

An injunction against the implementation of the Project based on the above described violations is also warranted in this case. The Ninth Circuit holds that "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable." *Sierra Club v. Bosworth*, 510 F.3d 1016, 1033-1034 (9th Cir. 2007) (citation and internal punctuation omitted) (addressing National Forest logging). Implementation of the Project will cause irreparable harm to Plaintiffs' interests - the Project proposes logging and burning within the Custer Gallatin National Forest. *See Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987) (observing that "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.*, irreparable").

If the court finds an injunction unnecessary or inappropriate at this time, Plaintiffs request that the court issue an order directing the Forest Service to provide 60 days notice to Plaintiffs of its intent implement Project based actions, including timber sales, ground-disturbing activities, or other actions, prior to implementation of those actions. At that time, Plaintiffs could seek an injunction from the court for that specific action if necessary and appropriate at that time.

Bricklin & Newman, LLP
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300

1

**CONCLUSION**

2

3      For all of the above stated reasons, the Alliance for the Wild Rockies and Native

4   Ecosystems Council respectfully request that the court grant summary judgment in

5   Plaintiffs' favor, enjoin the Project, and grant any such further relief as may be just,

6
    proper, and equitable.
7

8      Dated this 14th day of February, 2022.

9                                              Respectfully submitted,

10
                                               BRICKLIN & NEWMAN, LLP
11

12                                             By:    *s/Claudia M. Newman*
                                                      Claudia M. Newman, WSBA No. 24928
13                                                    123 NW 36th Steet, Suite 206
14                                                    Seattle, WA  98107
                                                      (206) 264-8600
15                                                    newman@bnd-law.com
16                                                    Attorneys for Plaintiffs

17                                             LAURA KING

18
                                               By:    */s/ Laura King*
19                                                    Laura King, MT Bar # 13574
20                                                    7 Mergenthaler Road
                                                      Montana City, MT 59634
21                                                    laurahelenking@gmail.com
22                                                    (909) 200-9776
                                                      Attorneys for Plaintiff
23

24

25

26

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel.  (206) 264-8600
FAX. (206) 264-9300

1
2
## CERTIFICATE OF COMPLIANCE

3      I hereby certify that the foregoing brief is 8,111 words, excluding the caption,

4
5  table of authorities, table of contents, signature blocks, and certificate of compliance in

6  compliance with the Order issued by this court on December 7, 2021.

7
8
                                                    */s/Claudia M. Newman*

9
10                                             CLAUDIA M. NEWMAN

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

PLAINTIFFS' BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT - 38

**Bricklin & Newman, LLP**
Attorneys at Law
123 NW 36th Street, Suite 205
Seattle WA 98107
Tel. (206) 264-8600
FAX. (206) 264-9300